[The Bigelows, and Kellogg, were adjudicated bankrupts. as appears by the annexed papers, on the 16th day of November, 1867, and on the petition of the First National Bank of Saugerties. The indebtedness set out in the case agreed upon and hereto annexed had mostly accrued prior to that time. The assignee was not appointed until the 25th January, 1868.

## Case No. 1,396.

### In re BIGELOW et al.

[2 Ben. 480; [1] 1 N. B. R. 632, (Quarto, 186;) 1 Am. Law T. Rep. Bankr. 95.]

District Court, S. D. New York. June, 1868.

BANKRUPTCY—APPLICATION BY CREDITORS TO SELL COLLATERALS — PREVIOUS PROOF OF DEBT NECESSARY.

1. Where, in bankruptcy proceedings, a creditor, claiming to hold collaterals as security for an indebtedness of the bankrupts, applied for an order to sell the same, under the twentieth section of the bankruptcy act, [March 2, 1867; 14 Stat. 526,] which was opposed by the assignee in bankruptcy on the ground that the creditor had not proved his debt, as required by the twenty-second section of the act: *Held*, that the creditor could substantiate his claim against the bankrupts, so far as to comply with the requirements of the twenty-second section, without previously ascertaining the value of the securities which he held.

2. That, as the creditor's right to hold the collaterals was dependent upon his ability to show himself to be a creditor, no permission to sell the collaterals could be granted, until his right to sell them was shown, as required by the twenty-second section of the act.

[Cited in Re Bloss, Case No. 1,562; Re Frizelle, Id. 5,133; Re Brinkman, Id. 1,884; Phelps v. Sellick, Id. 11,079; Re California Pac. R. Co., Id. 2,315; Re Hufnagel, Id. 6,837; Re Crossette, Id. 3,435.]

[3. Cited in Re Stansell, Case No. 13,293, as implying that, in proving a mortgagee's debt, the lien should be stated in order that it may not be considered waived.]

[In bankruptcy. In the matter of Edward Bigelow, David Bigelow, and Nathan Kellogg. Heard on an application by the National Bank of the Commonwealth for an order to sell certain collaterals. Denied.

James Emott and E. H. Pomeroy, for the motion.

P. Cantine, opposed.

BENEDICT, District Judge. This is an application, on the part of the National Bank of the Commonwealth, for an order directing the sale by the bank of certain stocks belonging to the above-named bankrupts, which the bank claims to hold as security for the indebtedness of the bankrupts to the bank.

The application is founded upon a petition setting forth that the bank is a creditor of

---

[3] [From 1 N. B. R. 667; the report from 2 Ben. 469, containing merely a condensed statement of the register's findings and opinion.]

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

the bankrupts to the extent of $31,880, as security for which it holds certain stocks pledged by the bankrupts, the value of which is uncertain, and as to which value the assignee in bankruptcy declines to agree; and the petitioners therefore pray for an order to sell said stocks, in accordance with the provisions of the twentieth section of the bankruptcy act, [March 2, 1867; 14 Stat. 526,] which declares that "when a creditor has a mortgage or pledge of real or personal property of the bankrupt, or a lien thereon for securing the payment of a debt owing to him from the bankrupt, he shall be admitted as a creditor only for the balance of the debt, after deducting the value of such property, to be ascertained by agreement between him and the assignee, or by a sale thereof, to be made in such manner as the court shall direct."

The application is strenuously opposed by the assignee in bankruptcy, principally upon the ground that it is premature, inasmuch as the petitioners have taken no steps whatever to exhibit or prove their debt in the manner required by the twenty-second section of the bankruptcy act.

The question thus raised I have considered with some care, because of the very positive opinion expressed by the intelligent counsel for the petitioners, that, if the application of the petitioners be now denied, it will be impossible for them to make proof of their debt without by that act releasing their right to the securities which they claim to hold.

This opinion, I am satisfied, by an examination of the various provisions of the bankruptcy act, is erroneous; and I am also satisfied that, in the present posture of the proceedings, the application of the petitioners cannot be granted.

According to the plain words of the very provision of the twentieth section which gives power to make the order here prayed for, the right to the order is made to depend upon certain facts, namely: the existence of a debt owing to the creditor from the bankrupt, by virtue of which the creditor is to be admitted to share in the distribution of the bankrupt's estate, and the existence in the hands of the creditor of securities pledged by the bankrupt to secure the payment of that debt.

How these facts shall be made to appear, is not provided in the twentieth section, but is provided in the twenty-second section. According to the twenty-second section, any creditor desiring to be admitted to share in the estate of the bankrupt by virtue of a debt owing him from the bankrupt, must exhibit his claim in a deposition, setting forth the consideration thereof and the securities, if any, held therefor. Upon this deposition a hearing may be had, and testimony offered both in support of and in opposition to the averments of the deposition; and an adjudication is to be thereon made. But it will be noticed that the value of the securities which

may appear to be held by the creditor is not required by the act to be set forth in the deposition, and that form twenty-one only requires an estimate of that value to be made. The value of the securities forms no part of the issue which the deposition tenders, nor is it a fact of any importance to be known until it shall appear that there is a valid indebtedness, and that such property is held as security therefor.

These facts having been made to appear, and it being thus determined that the person claiming to be a creditor is in fact entitled to share in the distribution of the estate, it then becomes necessary to ascertain the value of the property of the bankrupt which the creditor is entitled to hold, in order, by charging that value against the indebtedness shown to exist, to fix the amount which is to be allowed as the creditor's debt, for which he is entitled to be admitted to share in the distribution of the assets.

The mode of ascertaining this value is given in the portion of the twentieth section above cited, and when this value has thus been ascertained and deducted from the indebtedness proved, then the debt of the creditor is proved within the meaning of the twentieth section.

As used in that section, the word "debt" means the amount upon which the dividend is to be computed, and the phrase, "prove his debt," is equivalent to the phrase, "share in the distribution of the assets."

A creditor does not prove as against the estate, or offer to so prove, the whole indebtedness of the bankrupt exhibited in his deposition, when against that indebtedness are set out securities held therefor, the value of which, when ascertained, the court is asked to deduct from the indebtedness, in order to arrive at the balance of the account, for which balance alone the creditor seeks to be admitted to share in the distribution of the assets; and I fail to find any provision in the bankruptcy act which declares that the exhibition of such a deposition, and proving the facts which it avers, if it be contested, will invalidate the right of the creditor to the securities which he is found to hold.

But it is said that the twentieth section declares that if the security be not sold or released, the creditor shall not be allowed to prove any portion of his debt, and therefore that the sale asked for is a necessary precedent to any attempt to exhibit a claim to be a creditor. I have above stated that this clause does not, in my opinion, refer to the exhibition of the claim required by the twenty-second section, but refers to the right of the creditor to have his debt placed on the list as entitled to draw a dividend. But, if this be not so, it is by no means certain that the clause is applicable to any case but one where the value of the property exceeds the sum for which it is held as security, which is not the case here; and, besides, if the clause be applicable to this case, it certainly

does not declare that if the creditor does prove his debt, he shall lose his security. And, inasmuch as, in this case, the assignee, who is the only person opposing, insists that the petitioners can and must prove their debt, it would seem that the clause could be no impediment to the petitioners.

My conclusion, therefore, is that the petitioners can exhibit and substantiate their claim against these bankrupts so far as to comply with the requirements of the twenty-second section, without previously ascertaining the value of the securities which they hold, and that inasmuch as their rights to the proceeds of the stocks, which they concede to be the property of the bankrupts, is dependent upon their ability to show themselves to be creditors, and to hold this property as security, no permission should be granted them to sell the property until their right to do so is shown in the manner required by the twenty-second section of the act. To grant that permission now would be to assume the existence of facts which may never be made to appear, for it cannot now be shown that the petitioners will ever seek to participate in the proceedings in bankruptcy; or, if they do, that upon the hearing it will be adjudged that they have any debt, or, if they have, that these stocks were pledged to them as security therefor; and what title would be conveyed by a sale made under such circumstances, in the event of its being adjudged, in the bankrupt proceedings, that the petitioners were not creditors of the bankrupts, or that they did not hold these stocks of the bankrupts as security for any debt.

To grant that permission would be to assume as proved the facts upon which the right to the order is, by the act, made dependent, and yet make the order for the sole reason that these same facts have not been, and cannot now be, proved.

I must confess my inability to see how such action can be properly required of the court. The motion is therefore denied.